```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
DR. AHMED DIAA ELDIN ALI MOHAMED     :
HUSSEIN,                             :
                                     :
         Plaintiff,                  :    22-cv-2592 (JSR)
                                     :
         -v-                         :    MEMORANDUM ORDER
                                     :
DR. MOHAMED AHMED MAAIT, in his      :
official capacity as MINISTER OF     :
FINANCE OF THE ARAB REPUBLIC OF      :
EGYPT,                               :
                                     :
         Defendant.                  :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff, Dr. Ahmed Diaa Eldin Ali Mohamed Hussein, filed a motion for summary judgment in lieu of complaint in New York state court seeking enforcement of an "Egyptian judgment" against defendant Dr. Mohamed Ahmed Maait in Maait's official capacity as Minister of Finance of the Arab Republic of Egypt. ECF No. 1. After Maait removed the case to federal court, Hussein filed a motion to remand. On April 18, 2022, the Court denied Hussein's motion to remand on the ground that Egypt is the real party-in-interest and that the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1602 et seq., applies.

Now before the Court is Maait's motion to dismiss Hussein's motion for summary judgment in lieu of complaint and to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6). For the reasons set out below, the Court finds that it lacks jurisdiction and accordingly grants the motion to dismiss pursuant to Rule 12(b)(1).

**BACKGROUND**

Unless otherwise indicated, the following factual allegations are taken from the motion for summary judgment in lieu of complaint that Hussein filed in New York state court pursuant to N.Y. C.P.L.R. § 3213. That motion was supported by Hussein's affirmation, ECF No. 3-3, as well as three attached exhibits, ECF Nos. 303, Ex. A, ECF No. 3-11, and ECF No. 3-12. In response, Maait also references Hussein's arbitration demand against Egypt, ECF No. 22-1, various other of Hussein's judicial and regulatory filings, and a declaration of an expert on Egyptian law, Bahielden Elibrachy, ECF No. 23.[1]

Hussein is a dual Egyptian and American citizen who resides in Egypt, though he also owns a residence in New York. Hussein alleges that in 1994, he partnered with the National Bank of Egypt to found an investment bank in Egypt, the National Investment Company ("NIC"), which is incorporated under the laws of Egypt. In

---

[1] On a 12(b)(1) motion to dismiss for lack of jurisdiction, the Court may consider additional factual materials outside the complaint. See Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam).

a proxy statement filed with the U.S. Securities & Exchange Commission in 2012, Hussein described his occupation as Chairman of the Board of Directors of NIC. Hussein further alleges that in 1997, he purchased all shares of NIC and transferred them to an unnamed holding company in Egypt.

Hussein alleges that in 1997, he or the unnamed holding company purchased shares amounting to about 72% of SIMO, an Egyptian company that manufactures and sells paper products in Egypt, in an open-market transaction. This purchase of shares was made in connection with the privatization of SIMO, which was formerly owned by the Egyptian government. Hussein asserts that when he purchased the SIMO shares, he used funds from his personal accounts in New York as well as funds borrowed from banks in the U.S. leveraged with his investments in the U.S. Hussein asserts that his purchase of the SIMO shares, made on the Egyptian Stock Exchange, was equivalent to approximately $15.714 million at the time it was made.

Hussein further alleges that in 1999, the Chairman of the Egyptian Companies' Regulatory Authority gave control of SIMO to the Egyptian government, under the auspices of the Chemical Holding Company, "effectively expropriating all of the shares of SIMO." Hussein does not allege that the Egyptian government actually took ownership of the SIMO shares then or at any later point, and

Hussein affirms that he continued to acquire SIMO shares from 2000 through 2014.

Hussein alleges that he "immediately" began to pursue compensation for the alleged expropriation of shares by filing a lawsuit in the Egyptian courts "to return the Company to the rightful owners, and obtain compensation for the damage caused by this illegal taking." ECF No. 3-3. ¶ 11. While Hussein asserts that in 2005 and 2006, the Egyptian courts ruled that SIMO should be returned to its "rightful owners" and awarded damages, he does not provide copies of those rulings and his motion pursuant to N.Y. C.P.L.R. § 3213 does not seek to enforce those rulings.

Instead, Hussein's motion pursuant to N.Y. C.P.L.R. § 3213 seeks recognition and enforcement of the "Egyptian Judgment," which Hussein characterizes as a foreign money judgment, but which consists of two components: an executive decree issued on June 2, 2014, by the Egyptian Prime Minister (Decree 961), and a judgment issued in a case brought in 2011 in Egypt's Administrative Justice Court (Judgment 6193). Decree 961 directs that SIMO be "returned back to sector of public businesses" and directs the Minister of Finance to "provide all necessary financial credits related to the shareholders' rights . . . ." ECF No. 3-12. Decree 961 does not define "necessary financial credits" or provide for how they are to be calculated; neither does it identify the shareholders who

are to be paid. Decree 961 leaves its execution to "the concerned agencies." Id.

Judgment 6193 was issued on April 8, 2014, in a case, brought by plaintiffs who were mostly former SIMO employees, that named Hussein as a defendant, along with the Egyptian Stock Exchange and various Egyptian government officials in their official capacities. ECF No. 3-11. The plaintiffs sought to annul SIMO's privatization as well as to annul disposing of the shares sold to Hussein, his family members, and his companies -- i.e., it did not seek compensation on behalf of Hussein, but rather against him. Hussein did not present any crossclaim for compensation. In Judgment 6193, Egypt's Administrative Justice Court ruled that the privatization of SIMO was not properly authorized and thus in contradiction with the law, and should be annulled. The judgment cancelled the decision to privatize SIMO, "particularly the annulment of disposition by selling of the shares of the company," and directed that SIMO was to be returned to the state "free from encumbrances and mortgages . . . ." Id. Judgment 6193 mentions only compensation as to the plaintiff former employees, not as to defendant Hussein. Hussein did not appeal Judgment 6193 to any Egyptian appellate court.

One of Hussein's holding companies asked the Ministerial Committee for Investment Disputes to hear his claims, but the

authority declined. He also sought to commence an investment arbitration against Egypt, but the authority declined to hear the claim.

On December 13, 2021, Hussein filed a motion for summary judgment in lieu of complaint pursuant to C.P.L.R. § 3213 in New York state court, seeking recognition of Judgment 6193 and Decree 961 as the "Egyptian Judgment." He then filed an amended summons and amended notice of motion for summary judgment in lieu of complaint on December 27, 2021. Service was effectuated on February 3, 2022. On March 30, 2022, Maait filed a notice of removal; Hussein subsequently moved to remand the case to state court. On April 18, 2022, the Court denied Hussein's motion to remand on the ground that Egypt is the real party-in-interest and that the FSIA applies. On April 20, 2022, the Court stayed merits discovery pending the disposition of defendant's instant motion to dismiss.

## LEGAL STANDARD

The plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence in order to survive a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Once a defendant has established that it enjoys immunity under the FSIA, the plaintiff must adduce sufficient facts

to show that his claims fall within one of the FSIA's statutory exceptions to immunity. Kensington Int'l Ltd. v. Itoua, 505 F.3d 147, 153 (2d Cir. 2007).

## DISCUSSION

Maait's motion to dismiss contends, first, that the court lacks subject matter jurisdiction because Hussein has not established that any of the FSIA's statutory exceptions to immunity applies in this case, and second, that Hussein fails to state a claim upon which relief can be granted. Because the Court agrees with the first contention, it need not address the second.

The FSIA provides the sole basis for a U.S. court's exercise of jurisdiction over a foreign sovereign. See Rukoro v. Federal Rep. of Germany, 976 F.3d 218, 223 (2d Cir. 2020). Under the FSIA, the Arab Republic of Egypt -- the "real party in interest" in this case -- is immune from suit in the U.S. unless the plaintiff can establish that his claim falls within one of the FSIA's statutory exceptions.

Hussein argues that his summary judgment motion in lieu of complaint under New York's Article 53 falls within the third prong of the "commercial activity" exception to the FSIA. The FSIA's commercial activity exception to foreign sovereign immunity applies to cases "in which the action is based upon . . . an act

outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Consequently, to qualify for the exception, Hussein must establish that the action (1) is "based . . . upon an act outside the territory of the United States; (2) [] was taken in connection with a commercial activity of [Egypt] outside this country; and (3) [] cause[d] a direct effect in the United States." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 611 (1992) (fourth alteration in original) (internal quotation marks omitted).

Applying these requirements to this case, the Court must first "identify the act" of the foreign state that serves as the basis for a claim, Garb v. Republic of Poland, 440 F.3d 579, 586 (2d Cir. 2006), that is, identify the "particular conduct" that constitutes the "gravamen" or "core" of the suit, OBB Personenverkehr AG v. Sachs, 577 U.S. 27, 33, 35 (2015).

Hussein argues that the relevant acts are those that underly the Egyptian judgment, not the elements of a claim to recognize a foreign judgment under New York state law. Hussein argues that to hold otherwise would prevent a plaintiff from enforcing any foreign judgments against foreign sovereigns in U.S. courts under § 1605(a)(2), because the elements of that enforcement action

would never be based upon the underlying commercial activity. Hussein argues that because his lawsuit arose out of Egypt's cancellation of the sale of SIMO shares, the case is based upon an act of a foreign state that is truly the gravamen of his suit. But the Second Circuit subsequently clarified that the case on which Hussein relies for this proposition, International Housing Ltd. v. Rafidain Bank Iraq, 893 F.2d 8, 11-12 (2d Cir. 1989), is in tension with the Supreme Court's subsequent decision in Nelson. See Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 389 n.4 (2d Cir. 2000) (observing that there is "some tension" but declining to take a position on the impact of Nelson on the Second Circuit's approach in International Housing Limited).

Hussein argues that the sale of the SIMO shares is commercial in nature because it is the type of activity commonly performed by private citizens within the private market, and so Egypt's obligation to repay the price after cancellation of the sale is itself commercial in nature. The claim is not, however, Egypt's "cancellation of the shares of SIMO," but instead a straightforward taking. Indeed, Hussein's motion for summary judgment in lieu of complaint nowhere mentions the claim as being about Egypt's cancellation of the SIMO shares. Moreover, Hussein's own declaration concedes that the "cancellation" of the SIMO shares

was the mechanism by which SIMO was returned to the government-owned holding company -- and any emphasis on the cancellation that ignores the return to government ownership misses the mark.[2]

In an action seeking recognition of a foreign money judgment, the claim must be "based upon" the judgment itself, not the conduct giving rise to the judgment, because identifying the gravamen of the suit requires identifying "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." Saudia Arabia v. Nelson, 507 U.S. 349, 357 (1993). Even if the court were to look at the conduct underlying the "Egyptian Judgment," the gravamen of the claim would still be Egypt's alleged expropriation of private property, (namely, Hussein's shares in SIMO) -- a sovereign, and not commercial act. See Barnet as Tr. of 2012 Saretta Barnet Revocable Tr. v. Ministry of Culture & Sports of the Hellenic Republic, 961 F.3d 193, 201 (2d Cir. 2020) ("Nationalizing property is a distinctly sovereign act."); Garb,

---

[2]  Hussein's reliance on Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A. is misplaced. 895 F.3d 194, 199 (2d Cir. 2018). In that case, the Second Circuit held that a suit to enforce contractual by-law provisions, triggered by the Argentinian government's acquisition of a majority stake in a company, fell within the FSIA's commercial activity exception. Id. at 207. Unlike this case, the gravamen of the claim in Petersen was to enforce the by-law obligation where the investor still held shares in the company, in stark contrast to expropriation based on the rescission of Hussein's purchases of SIMO shares that returned the shares to a government-owned holding company.

440 F.3d at 586-87 ("Expropriation is a decidedly sovereign—rather than commercial—activity.").

Hussein has thus not met its burden to establish by a preponderance of the evidence that the action upon which his claim is based was taken in connection with commercial activity.

Hussein has also failed to meet his burden to establish that the action had any direct effect on the U.S. An effect is "direct" for purposes of § 1605(a)(2) "if it follows as an immediate consequence of the defendant's activity." Weltover, 504 U.S. at 618 (internal citations and quotation marks omitted). The effect need not be "substantial" nor "foreseeable," but it cannot be "purely trivial" or "remote and attenuated." Id. at 611.

Hussein argues that he purchased the SIMO shares using funds from his personal accounts in New York, and funds borrowed from banks in the U.S. leveraged with his investments in the U.S. He further argues that his ability to repay the borrowed amounts from U.S. banks, as well as the value and ownership of his investments in the U.S., were negatively affected because Egypt cancelled the sale of SIMO shares and did not compensate Hussein, which Hussein argues Egypt was required to do by the "Egyptian Judgment."

But these effects are contingent on the actions of Hussein himself, not on any act by Egypt. The fact that Hussein's ability to repay borrowed amounts from U.S. banks and the value and

ownership of his U.S. investments are impacted by nonpayment are because Hussein decided to borrow against his U.S. assets to buy the SIMO shares and then to forego making payment on those loans. Because of this contingency, independent of any act by Egypt, the effect is not sufficiently "direct": it is not an immediate consequence of Egypt's nonpayment because the effect depends on circumstances independent of Egypt's actions. See Guirlando v. T.C. Ziraat Bankasi A.S., 602 F.3d 69, 75 (2d Cir. 2010) (holding that "the requisite immediacy is lacking where the alleged effect depend[s] crucially on variables independent of the conduct of the foreign state (internal quotation marks omitted, alteration in original)).[3]

In addition, because Hussein cannot establish that the "Egyptian Judgment" called for payment in the U.S., he cannot

---

[3] Furthermore, any loss that Hussein suffered as an "American investor" is not sufficient to constitute a "direct effect" on the U.S. Hussein's argument is based on Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC, 813 F.3d 98, 112 (2d Cir. 2016), but this reliance is misplaced. In that case, the Second Circuit held that a court assessing the "direct effect" in the U.S. of an alleged tort should consider the tort's locus, or place of wrong. Id. at 109-10. Hussein does not assert that Egypt committed any tort, but instead seeks recognition of a foreign money judgment. In any event, the locus of any tort would likely be in Egypt, where any action or inaction of Egypt occurred and where Hussein resides. Hussein, an Egyptian citizen and resident, cannot claim that any financial loss he suffered was to "an American investor," and thus cannot argue that any such financial loss has a "direct effect" in the U.S.

establish a direct effect in the U.S. from the alleged nonpayment. See, e.g., Valambhia v. United Republic of Tanzania, 964 F.3d 1135, 1142 (D.C. Cir. 2020), cert. denied, 141 S. Ct. 2512 (2021). Not only do Decree 961 and Judgment 6193 contain no indication that shareholders would be paid in the U.S., Hussein makes no allegation that Egypt undertook to pay any purported obligation in the U.S. Hussein fails establish that Egypt's action had any direct effect in the U.S.

Because Hussein has not met his burden to establish that any of the FSIA exceptions apply in this case, the Court grants the Rule 12(b)(1) motion to dismiss for lack of jurisdiction.[4]

## CONCLUSION

For the reasons above, the Court hereby grants Maait's motion to dismiss the summary judgment motion in lieu of complaint. The Clerk of Court is directed to enter judgment dismissing the complaint for want of jurisdiction and to close the case.

Dated:  New York, NY  
        June 13, 2022

_____  
JED S. RAKOFF, U.S.D.J.

---

[4] Because the lack of jurisdiction is sufficient grounds to dismiss Hussein's motion for summary judgment in lieu of complaint, the Court declines to address the arguments to dismiss pursuant to Rule 12(b)(6).